# Le BROU *v.* NIX.

PATENTS; RENEWAL APPLICATIONS; POWERS OF ATTORNEY.

1. Under sec. 4897, Rev. Stat., U. S. Comp. Stat. 1901, p. 3386, permitting an inventor or assignee who has failed to obtain a patent by reason of nonpayment of the final fee, "to make an application for a patent for such invention or discovery the same as in the case of an original application," it is not necessary for the applicant or assignee, after such failure, to file a new application; but a mere petition to renew the original application, as provided for by rule 176 of the Patent Office, is sufficient. The words quoted have reference to the status of the application after renewal. It may then be examined upon its merits, and the patent granted or withheld "as in the case of an original application." (Citing *Cutler* v. *Leonard,* 31 App. D. C. 297.)

2. An attorney of record for an applicant for a patent, who has filed with the original application the customary power of attorney to prosecute the application, contining full power of substitution and revocation and the right to make alterations and amendments therein, has authority to file on behalf of the applicant a petition for renewal.

No. 750. Patent Appeals. Submitted March 12, 1912. Decided April 1, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.         *Affirmed.*

The facts are stated in the opinion.

*Mr. J. Walter Douglass* and *Mr. Allen Webster* for the appellant.

*Mr. James L. Hopkins* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an interference proceeding in which priority of invention, by successive decisions of the Patent Office tribunals, has been awarded James L. Nix, the senior party.

The patent involves a method of incubation. The original application of Nix was filed December 30, 1907, and was allowed May 8, 1908. On November 8, 1908, the application became forfeited because of failure to pay the final fee. On June 21, 1909, the attorneys of record of Nix filed a petition in his name, signed by them as such attorneys, making a renewed application for letters patent, and praying "that the original specification, oath, and drawings," be made a part of the petition. This petition was accepted and acted upon by the Patent Office. John F. LeBrou's application was not filed until June 28, 1909, which was subsequent to the renewal application of Nix. The date of conception alleged in LeBrou's preliminary statement was subsequent to the filing date of Nix. Notwithstanding that fact, LeBrou contended, and still contends, that he is entitled to priority because of alleged irregularities in the Nix renewal petition.

Under 4897, Rev. Stat., U. S. Comp. Stat. 1901, p. 3386, any person who has an interest in an invention, whether as inventor or as assignee, who has failed to obtain an allowed patent by reason of nonpayment, within a given time after notice, of the final fee, is declared to "have a right to make an application for a patent for such invention or discovery the same as in the case of an original application." This second application must be made within two years, and no person may be held responsible in damages for the manufacture or use of the invented article prior to the actual issuance of the patent. Abandonment, under this statute, must be considered as a question of fact. Rule 176 of the Patent Office allows the oath, petition, specification, drawings, and model of the original application to be used for the second application, but requires a new fee.

It is insisted by counsel for LeBrou that rule 176 is inconsistent with said sec. 4897, and hence void. They contend for a literal reading of sec. 4897. It is at once apparent that this contention leaves entirely out of view the remedial nature of the section. To construe it according to appellant's contention would be to require the same formalities in the renewed

application as in the original. If such is the meaning of the section, it conferred no new right upon the inventor, since he already possessed the right to file a second ·application after having permitted the first to become forfeited. This is too narrow a view of the statute. We think Congress thereby intended to permit a practical reinstatement of an allowed application, unless an intent to abandon should be found. *Cutler* v. *Leonard,* 31 App. D. C. 297. See also *Baglin* v. *Cusenier Co.* 221 U. S. 598, 55 L. ed. 871, 31 Sup. Ct. Rep. 669. Having already filed an application upon which the Patent Office was content to allow a patent, it is difficult to perceive why the inventor should be required to do more than petition the Commissioner to renew that application. An acceptance of appellant's contentions would increase the burdens of the Patent Office, without in any way, so far as we can see, subserving any useful purpose. The words "the same as in the ·case of an original application" have reference, we think, to the status of the application *after* renewal. It may then be examined upon its merits, and the patent granted or withheld "as in the case of an original application."

Nor do we perceive any reason why the attorney of record may not file, in·behalf of his client, a petition for renewal. In *De La Vergne Refrigerating Mach. Co.* v. *Featherstone,* 147 U. S. 209, 37 L. ed. 138, 13 Sup. Ct. Rep. 283, it was contended that sec. 4896, Rev. Stat. required the executor or administrator of an inventor who died before the grant of a patent to him to file a new petition. The court did not accept this contention, and ruled that "where the application has been made in the lifetime of the inventor, and remains in effect unchanged, there is no necessity for a new application or oath, except, of course, in the case of a reissue." The court further ruled that where an inventor makes oath to an application for a patent, filed in his lifetime, an amendment within the original oath of the inventor described in the original specification, made after the death of the inventor, without filing a new oath or *a new power of attorney,* is valid. By analogy, we think that case determinative of the question now

under examination.  Here the power of attorney filed with the original application conferred full power of substitution and revocation, to prosecute the application, to make alterations and amendments therein, to receive the patent, and to transact all business in the Patent Office connected therewith.  The application filed by these attorneys in behalf of Nix was in accordance with the requirements of the rules of the Patent Office. Moreover, their acts in the premises were ratified and adopted by Nix almost immediately thereafter, as the record discloses.

The decision is affirmed.                          *Affirmed.*